OPINION
{¶ 1} Plaintiffs-appellants, Nicholas Galinari, and his parents appeal from the September 2006 decision of the Clermont County Court of Common Pleas, granting summary judgment to defendant-appellees, Michael and Theresa Koop. For the reasons outlined below, we affirm the decision of the trial court.
 {¶ 2} This case arises from a tragic incident in which appellant dove off of a dock into *Page 2 
a shallow lake owned by appellees, severely injuring his spinal cord and rendering him quadriplegic. On July 4, 2003, appellant, then 21 years of age, was invited by his girlfriend, Kristin Bounds, to join her and her family at a Fourth of July party hosted by appellees on their property. Appellant had never been to appellees' property before. The property contains a small, man-made lake on which guests are permitted to swim, canoe, fish, and generally use for recreational purposes. On the shore of the lake, there is a ramp connected to a floating dock, all of which extends approximately 28 feet into the water. The water near the shoreline is fairly shallow, fluctuating between approximately ankle-deep and knee-deep. There is a ladder connected to the floating dock to allow people to enter the water. It is also possible to hop down into the water from this dock. Appellees also used this dock to tie up their canoe. In the middle of lake, appellees had erected another floating "island" dock as well as a separate platform with a slide that goes into the water.
 {¶ 3} After arriving at appellees' party, appellant and Kristin erected a tent where they planned to spend the night and then mingled with guests at the party for approximately 45 minutes to an hour. Appellant, Kristin, and Kristin's sister Carrie then decided to go swimming. According to appellant's deposition testimony, Kristin went into the lake while appellant went to the tent to change into swimming trunks. Appellant then headed down the stairs to the ramp and floating dock to enter the water. Appellant testified that he recalls seeing Kristin in the water near the end of the dock, but could not recall if she was standing or swimming. He did not recall seeing any other people in the water. Without stopping to check the depth of the water at the end of the dock, appellant jogged to the end of the dock and attempted a "shallow dive" to the right of Kristin. The water where appellant dove was approximately 16-18 inches deep. Appellant struck the bottom of the lake, severely injuring his spinal cord.
 {¶ 4} It is undisputed that appellees did not erect any signs on their property or give *Page 3 
any verbal warnings to appellant about diving off of the dock due to the depth of the water. In 2004, appellant and his parents filed the instant personal-injury action, asserting negligence claims against appellees for failure to warn appellant about a dangerous condition on their property. Appellees moved for summary judgment, arguing that they were under no duty to warn appellant of the shallow water in the lake because the condition was open and obvious.
 {¶ 5} On September 18, 2006, the trial court granted summary judgment to appellees. The court found that the shallow water was an open and obvious condition and that appellees therefore had no duty to warn appellant about a danger which he could have discovered through ordinary inspection. Appellant then filed this timely appeal, raising the following assignment of error for our review:
 {¶ 6} "THE LOWER COURT ERRED IN GRANTING THE MOTION FOR SUMMARY JUDGMENT OF THE APPELLEE-DEFENDANTS."
 {¶ 7} Appellant raises two issues under this assignment of error. Appellant first argues that the trial court improperly applied the open and obvious doctrine in finding that appellees owed no duty to warn appellant of the dangers of diving from their dock. Appellant contends that despite the known dangers involved in diving, the question of the appellees negligence in failing to warn appellant of the shallow water requires jury evaluation.
 {¶ 8} We note first that, on appeal, a trial court's decision granting summary judgment is reviewed de novo. Lykins v. Fun Spot Trampolines etal., Clinton App. No. CA2006-05-018, 2007-Ohio-1800, ¶ 11, citingBurgess v. Tackas (1998), 125 Ohio App.3d 294, 296. Summary judgment is proper, pursuant to Civ.R. 56(C), when no genuine issue of material fact remains for trial, the moving party is entitled to judgment as a matter of law, and reasonable minds, construing the evidence most strongly in the nonmoving party's favor, can only come to one conclusion, adverse to the nonmoving party. Id. "The movant bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine *Page 4 
issue of material fact." Id., citing Dresher v. Burt, 75 Ohio St.3d 280,293, 1996-Ohio-107. "Once this burden is met, the nonmovant has a reciprocal burden to set forth specific facts showing a genuine issue for trial." Id.
 {¶ 9} Appellant's negligence claim against appellees is based on premises liability. Specifically, appellant argues that he was a social guest on appellees' property and that appellees breached a duty of care in failing to warn him of the dangers of diving off of the dock into their lake. In their motion for summary judgment, appellees argued that they had no duty to warn appellant of the shallow water in the lake because the condition was open and obvious and discoverable by a person exercising ordinary care.
 {¶ 10} "It is fundamental that in order to establish a cause of action for negligence, a plaintiff must show (1) the existence of a duty; (2) a breach of that duty; and (3) injury proximately resulting therefrom."Sharpley v. Bole, Cuyahoga App. No. 83436, 2004-Ohio-5729, ¶ 12. The first element in a negligence action, the existence of a duty, is a question of law for the court to determine, and therefore a suitable basis for summary judgment. Yahle v. Historic Slumber Ltd., Clinton App. No. CA2001-04-015, 2001-Ohio-8667, citing Mussivand v. David (1989),67 Ohio St.3d 314, 318. In granting summary judgment to appellees, the trial court found that appellees had no duty to warn appellant because the depth of the water was easily discoverable and the dangers of diving into such water are open and obvious.
 {¶ 11} It is undisputed in this case that appellant was a social guest on appellees' property on the day of this accident. A social host owes his invited guest the duty to exercise ordinary care not to cause injury to his guest by any act of the host or by any activities carried on by the host while the guest is on the premises, and to warn the guest of any condition of the premises which is known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous, if the host has reason to believe that the guest does not know and will not discover the dangerous condition.Lykins *Page 5 
at ¶ 22. A host is not an insurer of the safety of a guest and owes a duty only to refrain from acts of negligence and to warn of concealed or hidden dangers which he has reason to believe the guest would not discover through the use of ordinary care. See Scheibel v. Lipton
(1951), 156 Ohio St. 308.
 {¶ 12} Regarding the duty to warn, it is well settled that a property owner owes no duty to warn invitees of dangers which are open and obvious. Lykins at ¶ 24. The rationale for this "open and obvious" doctrine is that the nature of the hazard serves as its own warning, and invitees then have a corresponding duty to take reasonable precautions to avoid dangers that are patent or obvious. Earnsberger v. GriffithsPark Swim Club, Summit App. No. 20882, 2002-Ohio-3739, ¶ 14. The Ohio Supreme Court recently addressed the viability of the open and obvious doctrine and explained that "the doctrine relates to the threshold issue of duty." Armstrong v. Best Buy Co., 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 13. "[I]t is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff." Id. Application of the doctrine obviates the duty to warn and acts as a complete bar to negligence claims. Id. at ¶ 14.
 {¶ 13} Whether a hazard is an open and obvious condition is a matter of law to be determined by the court, and therefore, a suitable basis for summary judgment. See id. at ¶ 15. In determining whether a condition is open and obvious, "the determinative question is whether the condition is discoverable or discernible by one who is acting with ordinary care under the circumstances." Earnsberger at ¶ 24 (emphasis in original). "Open and obvious hazards are those hazards that are not concealed and are discoverable by ordinary inspection." Lykins at ¶ 22, citing Parsons v. Lawson Co. (1989), 57 Ohio App.3d 49, 50-51. This determination is an objective one and, in fact, "a dangerous condition does not actually have to be observed by the claimant to be an open-and-obvious condition under the law." Id., citing Colvin v. KrogerCo., Madison App. No. CA2005-07-026, 2006-Ohio-1151. "Rather the *Page 6 
determinative issue is whether the condition is observable." Id.
 {¶ 14} In the case at bar, it is clear from the deposition evidence presented to the trial court that the depth of water at the end of appellees' dock was a discoverable condition. In her deposition, Kristin Bounds testified that she was standing in the water near the end of the dock when appellant dove in and that the water on that day was at or below her knees. Kristin's sister, Carrie, testified in her deposition that she recalls that the lake bottom was clearly visible from the floating dock where appellant dove. Appellees both testified in their depositions that the lake bottom is very often visible from the floating dock, although they could not recall if the lake bottom was visible on that day. Theresa Koop testified that the water was approximately 18 inches deep where appellant dove.
 {¶ 15} Appellant presented no evidence to refute those facts. Appellant further presented no evidence of why he had reason to believe that the water may have been deeper where he dove. Appellant testified that he had not been told he could dive from the dock and that he had not seen anyone dive from that dock before him. Appellant testified that Kristin was the only person he recalled seeing in the water as he jogged forward along the ramp and dove off of the dock. While appellant initially testified that he believed Kristin was swimming (a statement he reiterated in his later affidavit) appellant admitted that he could not be sure if she was standing and could not recall how much of her body was immersed in the water when he dove.
 {¶ 16} Based on this evidence, there is clearly no issue of fact that the depth of the water was a discoverable condition by someone exercising reasonable care under the circumstances. InArmstrong, the Ohio Supreme Court emphasized that had the plaintiff been looking down when he entered the store, he would have seen the guardrail. 2003-Ohio-2573 at ¶ 16. Sadly, the same is true in this case. Had appellant merely looked at the water at the end of the dock, or stepped into the water to determine its depth, he would have easily *Page 7 
determined that the lake was too shallow for diving. However, appellant admitted that he took no precautionary measures prior to diving into the lake. Because the shallow water is an open and obvious hazard, and because it is a condition which appellees could reasonably have expected appellant to discover through ordinary care, appellees owed no duty to warn appellant about the shallow water. Compare Lykins v. Fun SpotTrampolines, Clinton App. No. CA2006-05-018, 2007-Ohio-1800 (reversing grant of summary judgment where expert evidence was presented to show that hazardous conditions, not commonly associated with trampoline use, were created and issue of material fact existed regarding whether the hazards were open and obvious).
 {¶ 17} We also note that the dangers associated with diving into shallow water are not only open and obvious, but were actually known to appellant. Numerous Ohio courts under various factual scenarios have recognized that the danger associated with diving into shallow water is obvious. See Shremp v. Haugh's Products (Nov. 19, 1997), Lorain App. No. 97CA006655 (finding danger of diving into pool, where depth of water was only four to four-and-one-half feet, was an obvious danger), citingAllums v. Gillenwater (Apr. 25, 1996), Cuyahoga App. Nos. 68870, 68871 (finding no duty to warn owed where "the danger of diving into shallow water * * * was obvious to both defendants and the plaintiff"); see, also, Westray v. Imperial Pools (1999), 133 Ohio App.3d 426 (noting that diving into the shallow end of a pool is an inherently dangerous activity); Teggart v. Irwin Pools (Aug. 13, 1990), Richland App. No. CA-2744 (finding risk of injury was obvious where plaintiff dove into pool where water was four feet deep); Cox v. Sunset Park and Rec. (Apr. 19, 1977), Stark App. No. CA4594 (stating that "common sense dictates that diving head first into unclear water of unknown depth is a dangerous activity"). Further, appellant testified in his deposition that he was an experienced swimmer and diver. Appellant admitted that he was fully aware of the danger of diving into shallow water and that he had once scraped the bottom of his *Page 8 
grandmother's pool when diving too near the shallow end. Because the shallow lake water was a discoverable condition and because the risk of diving into such shallow water is an open and obvious hazard, appellees owed no duty to warn appellant of such a danger. See, generally,Glittenberg v. Doughboy Recreational Industries (Mich. 1992),491 N.W.2d 208 (applying open and obvious doctrine to uphold summary judgment to manufacturers and sellers of pools where shallow water is discoverable condition and diving into shallow water is open and obvious hazard).
 {¶ 18} Appellant asserts that despite the open and obvious dangers associated in diving, appellees still had a duty to warn. Appellant relies on two cases, Collier v. Northland Swim Club (1987),35 Ohio App.3d 35, and Rogaliner v. Lieb (Aug. 6, 1992), Perry App. No. CA-420, which he claims demand that diving accidents are to be decided solely under the doctrines of comparative negligence and implied assumption of risk. In those cases, the reviewing courts reversed a trial court's grant of summary judgment where the basis for summary judgment was primary assumption of an inherent risk associated with diving. InCollier, the appellate court relied on the Ohio Supreme Court decision in Benjamin v. Deffet Rentals (1981), 66 Ohio St.2d 86, 89 and explained that the appropriate standard to be applied to diving accident cases is that of implied, rather than primary, assumption of risk. Id. at 38. The court explained that, while primary assumption of risk refers to inherent, unavoidable dangers associated with certain activities, implied assumption of risk "includes those situations where the risk is so obvious that plaintiff must have known and appreciated the risk." Id. at 37. Because the dangers associated with diving may be avoided through proper warning and instruction, reasoned the Collier court, the proper standard is implied assumption of risk. See, also, Westray v. ImperialPools (1999), 133 Ohio App.3d 426 (discussing implied assumption of risk doctrine as applied to injured diver).
 {¶ 19} While the application of the doctrine of primary assumption of risk would impose *Page 9 
no duty on property owners due to the inherent dangers associated with diving, the doctrine of implied assumption of risk would find that some duty did exist and permit a court to engage in a comparative negligence analysis, precluding summary judgment. However, as was noted by the trial court in this case, neither of these cases addressed the question of a social host's duties where a hazardous condition is open and obvious and discoverable by a prudent and careful guest. See Shremp v.Haugh's Products (Nov. 19, 1997), Lorain App. No 97CA006655.
 {¶ 20} We note that while appellant urges the application of the implied assumption of risk doctrine, he does not argue that the depth of the water was not discoverable or that the dangers associated with diving into it were not open and obvious. There is no material issue of fact in that regard. We agree with the trial court that, as a matter of law, the depth of the water was an open and obvious condition and that appellant therefore had a corresponding duty to take reasonable precautions to avoid injury. Accordingly, we find that the trial court's decision to grant summary judgment was appropriate under the circumstances.
 {¶ 21} In the second issue raised under this assignment of error, appellant argues that despite the open and obvious danger created by the shallow water, the doctrine of attendant circumstances precludes summary judgment. Attendant circumstances are an exception to the open and obvious doctrine and refer to distractions that contribute to an injury by diverting the attention of the injured party and reduce the degree of care an ordinary person would exercise at the time. See Isaacs v.Meijer, Inc., Clermont App. No. CA2005-10-098, 2006-Ohio-1439; Hart v.Dockside Townhomes, Ltd. (June 11, 2001), Butler App. No. CA2000-11-222. "The phrase refers to all facts relating to the event," and have included such circumstances as "time of day, lack of familiarity with the route taken, lighting conditions, and accumulation of ice."Hart at p. 4-5. An attendant circumstance must "divert the attention of the [injured party], significantly enhance the danger of the defect, and contribute to the *Page 10 
[injury]." Isaacs at ¶ 16 (rejecting appellant's claim of attendant circumstances contributing to trip and fall over product box at grocery store). Additionally, an attendant circumstance is one that is beyond the control of the injured party. Id.
 {¶ 22} Appellant argues that the trial court improperly failed to consider attendant circumstances that unreasonably increased the normal risk of diving into the lake. Appellant cites the "inviting nature of the water," "other water activity" and the "lack of warnings" as circumstances contributing to appellant's belief that the water was safe for diving. First, we note that while the nature of the cool water may have been inviting on a hot Fourth of July, we cannot consider that to be an attendant circumstance distracting appellant from the ordinary use of care. Certainly, the inviting water did not prevent appellant from being able to discover its depth. See Isaacs at ¶ 18.
 {¶ 23} Appellant also argues that the circumstances of the party, the existence of other docks and slides, the length of the dock from which he dove, and the presence of people and canoes in the water created a visual appearance that diving from the end of the dock was safe. However, the only evidence appellant cites to in support of these circumstances is the deposition testimony of other witnesses. Other witnesses from the Fourth of July party gave somewhat varying testimony as to who may have been in the water and where. Appellant asserts that this creates fact questions as to the appearance of the water, precluding summary judgment. However, appellant testified that he did not recall seeing any water activity or anyone other than Kristin in the water at the time he dove. Again, appellant initially testified that he believed Kristin was swimming where he dove but later admitted that he could not be sure if she was standing or swimming, that he "wouldn't know one way or the other," and could not recall how much of her body was under water. As to that point, Kristin and her sister Carrie both testified that Kristin was standing with the water at knee level when appellant dove past and to the right of her. Further, appellant testified that he had not seen *Page 11 
anyone else dive from any dock before him, and that no one had ever implied that diving from that dock was safe. It is clear from this testimony that the "attendant circumstances" which appellant asserts were not distracting him from exercising due care because he did not even notice them. Appellant also failed to demonstrate any way in which these circumstances prevented him from exercising the ordinary amount of care or led him to believe that the water was safe for diving.
 {¶ 24} Finally, appellant argues that the lack of warning signs and the length of the dock gave the visual appearance that diving was safe. However, there is nothing about the visual appearance of the dock which can be said to have prevented appellant from using due care. Appellant offered no evidence that other people were diving from the dock or that appellees in any way encouraged or led him to believe that diving from that dock was safe. As explained by the trial court in this case, we cannot find that the mere existence of a dock is a "clear unambiguous invitation to dive into the water below" sufficient to qualify as an attendant circumstance, distracting individuals from otherwise using due care.
 {¶ 25} The depth of the lake water was a discoverable condition and the danger of diving into such shallow water was an open and obvious hazard. Further, we do not find any attendant circumstances which prevent application of the open and obvious doctrine. We therefore find that the trial court properly found that appellees had no duty to warn appellant of such danger and properly granted summary judgment. Appellant's assignment of error is overruled.
 {¶ 26} Judgment affirmed.
 BRESSLER and WALSH, JJ., concur. *Page 1