[Cite as *Gentry v. Collins*, 2013-Ohio-63.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


JENNIFER GENTRY, et al.,       :

    Plaintiffs-Appellants,       :       CASE NO.  CA2012-06-048

                              :       O P I N I O N

  - vs -                               1/14/2013

                              :

JASON COLLINS, et al.,       :

    Defendants-Appellees.       :


CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 09 CV 74659


Michael D. Weisensel, 2200 Kroger Bldg., 1014 Vine Street, Cincinnati, Ohio 45202, for plaintiffs-appellants

Jason Collins, 7650 Dickey Road, Middletown, Ohio 45042, defendant, pro se

Garvey Shearer PSC, David A. Shearer, Jr., 300 Buttermilk Pike, Suite 336, Ft. Mitchell, KY 41017, for defendants-appellees, Rhonda G. and John Wetzig

Sebaly, Schillito & Dyer, John Woodard, Scott S. Davies, 1900 Kettering Tower, 40 North Main Street, Dayton, Ohio 45402, for defendant, Aetna Life Insurance Co.

Lisa A. Pavlik, ACS Recovery Services, 1301 Basswood Road, Schaumburg, IL 60173, for defendant, Medical Mutual of Ohio


    **RINGLAND, J.**

    {¶ 1}  Plaintiffs-appellants, M. Jennifer Gentry, along with her husband, Robert

Gentry, and two minor children, appeal a decision in the Warren County Court of Common Pleas granting summary judgment to defendants-appellees, John and Rhonda Wetzig. For the reasons outlined below, we affirm.

{¶ 2} On June 28, 2008, the Wetzigs held a party at their house where Jennifer and Robert Gentry were social guests. They arrived at the Wetizigs around 6 p.m. and were served dinner around 8 p.m. In addition to dinner, the Wetzigs served alcohol. It is undisputed that almost all of the guests were drinking, including Jennifer Gentry. Jennifer Gentry admittedly drank a "few" peach slammers provided by the Wetzigs, and also had four or five beers that she brought to the Wetzigs.

{¶ 3} An aboveground swimming pool was located on the Wetzigs' premises. While some of the guests enjoyed the pool, Jennifer Gentry had no intention of swimming that evening. The Wetzigs contend that there were two flood lights penetrating from the house to the pool, tiki torches around the pool, and lights in the pool. Jennifer Gentry contends that the area around the pool was dark and not well-lit.

{¶ 4} Among the approximately 25 guests attending the party was Jason Collins, who arrived at the party around dusk. While Jennifer Gentry had only one previous interaction with Collins during which he had behaved appropriately, she remembered his entrance at the Wetzigs and described him as "loud and obnoxious." Sometime around 11 p.m., Jennifer Gentry was leaning against the outside of the pool talking to other guests when an intoxicated Collins picked her up and threw her into the pool. After yelling some expletives, Jennifer Gentry remained in the pool for several minutes. Robert Gentry confronted Collins, and asked why he threw Jennifer Gentry into the pool. Collins allegedly responded, "John told me to." Prior to hoisting Jennifer Gentry into the pool, Collins had thrown at least one other person into the pool.

{¶ 5} When Jennifer Gentry decided to leave the pool after approximately two to

three minutes, she climbed up a set of stairs that was located inside of the pool. At the top of the stairs, there was a platform. To leave the platform, there was a ladder going down the outside of the pool. After Jennifer Gentry reached the platform, she somehow fell to the ground and injured her left knee and leg.

{¶ 6} To compensate for the injuries and loss of consortium, on June 25, 2009, Jennifer Gentry, Robert Gentry, and their two minor children, filed a complaint alleging negligence on the part of the Wetzigs. The complaint also named Collins and several other parties as defendants. However, Collins had filed for bankruptcy, which caused the case to be stayed. Subsequent to the stay being lifted, Gentry voluntarily dismissed the claims against Collins and the other parties. In preparation for litigation, Jennifer Gentry, Robert Gentry, Rhonda Wetzig, and John Wetzig were all deposed.

{¶ 7} On February 16, 2012, the Wetzigs filed a motion for summary judgment, which the trial court granted. The trial court found that the Wetzigs did not breach any duty, and any evidence to be presented regarding the statement John Wetzig allegedly made to Collins was inadmissible as hearsay. It is from the trial court's granting of summary judgment that the Gentrys now appeal, and assert one assignment of error for review.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT COMMITTED ERROR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEES JOHN & RHONDA WETZIG.

## Argument

{¶ 10} The Gentrys contend that the trial court erred in granting summary judgment to the Wetzigs because the Wetzigs were negligent in several respects. The Gentrys assert that John Wetzig participated in harming Jennifer Gentry by encouraging Collins to throw her into the pool. The Gentrys also argue that the Wetzigs failed to protect Jennifer Gentry from dangerous and latent conditions on the premises, including the ladder configuration to exit

the pool and, their invited social guest, Collins. We disagree.

## Summary Judgment

{¶ 11} This court's review of a trial court's ruling on a summary judgment motion is de novo. *PNC Mtge. v. Innis*, 12th Dist. No. CA2010-10-013, 2011-Ohio-5594, ¶ 7. Civ.R. 56 sets forth the summary judgment standard and requires that (1) there be no genuine issues of material fact to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to only one conclusion that being adverse to the nonmoving party. *Slowey v. Midland Acres, Inc.*, 12th Dist. No. CA2007-08-030, 2008-Ohio-3077, ¶ 8. The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978).

{¶ 12} "Once the moving party's burden has been satisfied, the burden shifts to the non-moving party, as set forth in Civ.R. 56(E)." *Innis* at ¶ 8, citing *Jackson v. Walker*, 9th Dist. No. 22996, 2006-Ohio-4351, ¶ 10. The nonmoving party "may not rest on the mere allegations of his pleading," but the response, by depositions, affidavits, or as otherwise provided in Civ.R. 56, "must set forth specific facts showing the existence of a genuine triable issue." *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385 (1996). Not all arguable facts are material. *Innis* at ¶ 8. A dispute of fact is considered "material" only if it affects the outcome of the litigation. *Id.* Additionally, not all disputes of fact create a genuine issue. *Id.* Instead, a dispute of fact is considered "genuine" if it is supported by substantial evidence that exceeds the allegations in the complaint. *Id.*

## Negligence

{¶ 13} To recover on a claim for negligence, the plaintiff must prove (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, and (3) the breach of the duty proximately caused the plaintiff's injury. *Wellman v. E. Ohio Gas Co.*, 160 Ohio St. 103, 108-09 (1953).

**Proximate Cause**

{¶ 14} The Gentrys assert that John Wetzig participated in harming Jennifer Gentry by acting in concert with Collins by encouraging Collins to throw Jennifer Gentry into the swimming pool. The Gentrys also assert that the Wetzigs should have protected Jennifer Gentry from Collins or warned her about Collins. While these arguments relate to different duties the Wetzigs may have owed the Gentrys, both arguments presume that Jennifer Gentry being thrown into the pool was the proximate cause of her injuries. Consequently, we begin our analysis by addressing proximate cause because we find it dispositive of these arguments.

{¶ 15} "It is well settled that in order for a person to be entitled to recover in damages for a claimed negligent injury, the act complained of must be the direct and proximate cause of the injury." *Strother v. Hutchinson*, 67 Ohio St.2d 282, 286 (1981). *Ross v. Nutt*, 177 Ohio St. 113 (1964), states a foundational principle of proximate cause.

> As is said in Miller v. Baltimore & Ohio Southwestern Rd. Co., 78 Ohio St. 309, at page 325, * * * "the rule is elementary that a defendant in an action for negligence can be held to respond in damages only for the immediate and proximate result of the negligent act complained of, and in determining what is direct or proximate cause the rule requires that the injury sustained shall be the natural and probable consequence of the negligence alleged; that is, such consequence as under the surrounding circumstances of the particular case might, and should have been foreseen or anticipated by the wrongdoer as likely to follow his negligent act."

Consequently, "[i]f an injury is the natural and probable consequence of a negligent act and it is such as should have been foreseen in the light of all the attending circumstances, the injury is then the proximate result of the negligence." *Uddin v. Embassy Suites Hotel*, 165 Ohio App.3d 699, 2005-Ohio-6613, ¶ 43 (10th Dist.), quoting *Mudrich v. Std. Oil Co.*, 153 Ohio St. 31, 39 (1950).

{¶ 16} "Ordinarily, proximate cause is a question of fact for the jury. * * * However,

'where no facts are alleged justifying any reasonable inference that the acts or failure of the defendant constitute the proximate cause of the injury, there is nothing for the jury (to decide), and, as a matter of law, judgment must be given for the defendant.'" *Engle v. Salisbury Twp.,* 4th Dist. No. 03CA11, 2004-Ohio-2029, ¶ 27, quoting *Case v. Miami Chevrolet Co.,* 38 Ohio App. 41, 45-46 (1st Dist.1930).

{¶ 17} Under the surrounding circumstances, falling from the top of the platform or from the ladder on the outside of the pool was not the natural and probable consequence of being thrown into the pool. It was reasonably foreseeable that Jennifer Gentry might have been injured by being thrown into the pool (*e.g.* striking her knee at the bottom of the pool). However, this is not how Jennifer Gentry was injured. Jennifer Gentry was injured by traversing the exit to the pool. The proximate cause of Jennifer Gentry's injuries was either the nature of the ladder system or her own negligence. In either event, reasonable minds can reach only one conclusion, that Jennifer Gentry's injuries were not the proximate result of being thrown into pool. Because Jennifer Gentry's injuries were not the proximate result of being thrown into the pool, the Wetzigs were not negligent for allegedly acting in concert with Collins or failing to protect Jennifer Gentry from Collins.

{¶ 18} Furthermore, we note that the only indication that John Wetzig acted in concert with Collins is a statement made by Collins. The Gentrys contend that when asked why he threw Jennifer Gentry into the pool, Collins responded "John [Wetzig] told me to." The Gentrys assert that this statement allegedly made by John Wetzig is admissible as an exception to the hearsay rule because it is an excited utterance. To constitute an excited utterance it must relate "to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2); *State v. Leonard,* 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 94. The Gentrys contend that the event was Jennifer Gentry yelling expletives at Collins and Robert Gentry confronting Collins. However, Collins

intentionally threw Jennifer Gentry into the pool, and he should not have been surprised that such an action might evoke emotions of anger from Jennifer Gentry or her husband. Additionally, the statement is not admissible as an admission by a party-opponent because, regardless of when Collins was dismissed as a party, the statement does not satisfy the twin requirements of being offered against the party and being that party's own statement. *Mastran v. Urichich*, 37 Ohio St.3d 44 (1988); Evid.R. 801(D)(2)(a).

### Duty to Warn

{¶ 19} While we find the issue of proximate cause to be dispositive regarding whether Jennifer Gentry's injuries were a result of being thrown into the pool, we must address the Gentrys' argument that the ladder system constituted a dangerous and latent condition. It is undisputed that Jennifer Gentry was a social guest who was invited to the Wetzigs' property on the day of the accident. One of the duties a social host owes a guest is a duty to "warn the guest of any condition of the premises which is known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous." *Scheibel v. Lipton*, 156 Ohio St. 308 (1951), paragraph three of the syllabus. This duty only arises "if the host has reason to believe that the guest does not know and will not discover such dangerous condition." *Id.* While admittedly not defective, the ladder configuration to exit the pool has steps inside of the pool that lead to a platform at the top of the pool and connects to a ladder located outside the pool, which could possibly be considered dangerous. If so, the question becomes whether the Wetzigs had a duty to warn Jennifer Gentry of the ladder configuration if they had reason to believe Jennifer Gentry would not discover its condition.

### Open and Obvious Conditions

{¶ 20} A property owner owes no duty to warn of dangers which are open and obvious. *Galinari v. Michael Koop*, 12th Dist. No. CA2006-10-086, 2007-Ohio-4540, ¶ 12. The

rationale for this "open and obvious" doctrine is that the nature of the hazard serves as its own warning, and guests then have a corresponding duty to take reasonable precautions to avoid dangers that are patent or obvious. *Id.* Whether a hazard is an open and obvious condition is a matter of law to be determined by the court, and therefore, a suitable basis for summary judgment. *Galinari* at ¶ 13. Application of the doctrine relates to the threshold issue of duty and obviates the duty to warn and acts as a complete bar to negligence claims. *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 13-14.

{¶ 21} In deciding whether a condition is open and obvious, "the determinative question is whether the condition is *discoverable* or *discernible* by one who is acting with ordinary care under the circumstances." (Emphasis sic.) *Earnsberger v. Griffiths Park Swim Club*, 9th Dist. No. 20882, 2002-Ohio-3739, ¶ 24. This determination is an objective one and "a dangerous condition does not actually have to be observed by the claimant to be an open-and-obvious condition under the law." *Lykins v. Fun Spot Trampolines*, 12th Dist. No. CA2006-05-018, 2007-Ohio-1800, ¶ 24, citing *Colvin v. Kroger Co.*, 12th Dist. No. CA2005-07-026, 2006-Ohio-1151. "Rather the determinative issue is whether the condition is observable." *Id.*

{¶ 22} Ohio courts have recognized that darkness is an open and obvious condition. *McDonald v. Marbella Restaurant*, 8th Dist. No. 89810, 2008-Ohio-3667, ¶ 33. *See, e.g., Rezac v. Cuyahoga Falls Concerts, Inc.*, 9th Dist. No. 23313, 2007-Ohio-703; *Leonard v. Modene and Assoc., Inc.*, 6th Dist. No. WD-05-085, 2006-Ohio-5471; *Swonger v. Middlefield Village Apts.*, 11th Dist. No. 2003-G-2547, 2005-Ohio-941, ¶ 13; *McCoy v. Kroger Co.*, 10th Dist. No. 05AP-7, 2005-Ohio-6965, ¶ 16. *See also Jeswald v. Hutt*, 15 Ohio St.2d 224 (1968), paragraph three of the syllabus ("[d]arkness is always a warning of danger, and for one's own protection it may not be disregarded").

{¶ 23} In some instances, lighting conditions have been considered an attendant

circumstance that creates a question of fact. *E.g. Sharp v. Norfolk & W. Ry. Co.*, 36 Ohio St.3d 172 (1988) (finding lighting conditions a question of fact regarding whether an object was discernible on a highway to determine whether a driver violated an assured-clear-distance-ahead statute). However, Ohio courts have consistently held that dimly lit steps do not render steps unreasonably dangerous, but rather present an open and obvious danger of which the person traversing the steps should be aware. *McDonald* at ¶ 39. *See Johnson v. Regal Cinemas, Inc.*, 8th Dist. No. 93775, 2010-Ohio-1761; *Kornowski v. Chester Properties, Inc.*, 11th Dist. No. 99-G-2221, 2000 WL 895594 (June 30, 2000); *Orens v. Ricardo's Restaurant*, 8th Dist. No. 70403, 1996 WL 661024 (Nov. 14, 1996). Furthermore, Ohio courts have held to the extent that there may be a genuine issue of material fact as to the degree of darkness, summary judgment is appropriate, where if it was light enough to see, then steps presented an open and obvious hazard, and if it was dark, then the darkness was observable. *See McDonald* at ¶ 35-36; *Leonard*, 6th Dist. No. WD-05-085, 2006-Ohio-5471; *Estate of Helle v. Hensley*, 6th Dist. No. WM-10-017, 2011-Ohio-4279, ¶ 28-29.

{¶ 24} In this case, Jennifer Gentry's deposition revealed that as she arrived at the top of the pool, the next thing she knew, she was on the ground. Jennifer Gentry testified that the ladder "was not broken," and her affidavit revealed that she was unsure whether she "slipped or missed a step." Jennifer Gentry swore that she was unaware of the mechanics of her fall because it was dark. In contrast, the Wetzigs testified that it was light enough to see. In any event, the condition of the ladder configuration was discoverable and discernible. The pool was aboveground, necessitating some type of ladder system to descend to the ground. If it was light enough to see, the ladder descending the outside of the pool would have been discoverable. However, if it was not light enough to see, then the darkness itself was discernible. In either scenario, there was an open and obvious condition as Jennifer Gentry was exiting the pool, absolving the Wetzigs of any duty to warn of the ladder

configuration.

## Attendant Circumstances

{¶ 25} In their brief, the Gentrys only mention that the ladder configuration was dangerous and Jennifer Gentry could not appreciate the condition because it was dark. However, at oral argument, the Gentrys mentioned that other possible attendant circumstances, such as guests drinking alcohol and Jennifer Gentry wearing street clothes as she exited the pool, precluded Jennifer Gentry from appreciating the dangerous condition of the ladder. Consequently, we find it prudent to address the doctrine of attendant circumstances.

{¶ 26} "Attendant circumstances are an exception to the open and obvious doctrine and refer to distractions that contribute to an injury by diverting the attention of the injured party and reduce the degree of care an ordinary person would exercise at the time." *Galinari*, 12th Dist. No. CA2006-10-086, 2007-Ohio-4540, ¶ 21. An attendant circumstance is one that is beyond the control of the injured party and must "divert the attention of the [injured party], significantly enhance the danger of the defect, and contribute to the [injury]." *Isaacs v. Meijer, Inc.*, 12th Dist. No. CA2005-10-098, 2006-Ohio-1439, ¶ 16.

{¶ 27} Regarding intoxication, the duty to warn is not heightened by the voluntary intoxication of a guest. *Estate of Valesquez v. Cunningham*, 137 Ohio App.3d 413, 420 (5th Dist.2000). Jennifer Gentry testified that she drank four or five beers, which she brought to the party, and had a "few" peach slammers. Jennifer Gentry also described the party as a "drunken wild party," but that she maintained control of herself. In any event, Jennifer Gentry voluntarily consumed alcohol and whether she was drunk or not, the Wetzigs did not have a heightened duty to warn her of an open and obvious condition. Consequently, Jennifer Gentry consuming alcohol was not an attendant circumstance.

{¶ 28} Furthermore, while being thrown into the pool was outside the control of

Jennifer Gentry, it did not significantly enhance any danger the ladder presented. After remaining in the pool for several minutes, Jennifer Gentry exited the pool. She testified that "I was being careful and watching where I was going as best I could * * *." While Jennifer Gentry was wearing street clothes as she exited the pool, she was not wearing shoes when she exited the pool. There is no indication that the condition of her clothing distracted her as she was exiting the pool so to impair her ability to appreciate the open and obvious condition of the ladder or the darkness. Accordingly, we find that attendant circumstances did not obviate the open and obvious doctrine.

### Conclusion

{¶ 29} We find that reasonable minds could only come to one conclusion: that Jennifer Gentry being thrown into the pool was not the proximate cause of her injuries. Furthermore, we find that reasonable minds could only conclude that the ladder configuration, or in the alternative, the darkness, was an open and obvious condition absolving the Wetzigs of any duty to warn. Consequently, there are no genuine issues of material fact and the Wetzigs are entitled to summary judgment as a matter of law. The Gentrys' sole assignment of error is overruled.

{¶ 30} Judgment affirmed.

S. POWELL, P.J., and HENDRICKSON, J., concur.